ALSTON JONES V. THE STATE.

No. 21262. Delivered February 5, 1941.

The opinion states the case.

*Bennett & Bennett,* of Normangee, and *Hughes & Monroe,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted in the district court of Grimes County, Texas, for the offense of cattle theft and, upon an enhanced penalty allegation, given a sentence of ten years in the penitentiary, from which he appeals.

The first question for our consideration is the sufficiency of the evidence. The State relies for conviction principally on the testimony of Luther Sloan, a boy eleven years of age, and of Thomas Hall, who, it appears, testified as an accomplice witness. The evidence making him such is not clearly understood, but he was at the time serving a term in the penitentiary on a plea of guilty for cattle theft and the court charged the jury that there must be other evidence corroborating his.

J. Marcus Smith testified to the ownership of seven calves, one of which being the calf alleged to have been stolen by appellant. It disappeared from his pasture on September 14, 1939. Luther Sloan, who was living on the place with his mother who was occupying the house with Thomas Hall and his mother, said that about the middle of July he had been fishing and on his way back saw appellant and a negro with a reddish brown calf tied down. Near it was a truck. He did not see them put it in the truck, take it away or do anything else. Upon reaching his home he told Thomas Hall about this occurrence. The boy testified positively that this was in the month of July. Mr. Smith saw his calf at a later date and places its disappearance as September 14. Some time during the month of September appellant approached Thomas Hall in the town of Huntsville and asked him to engage himself with appellant in disposing of

some stolen cattle. He says I got one from Marcus Smith's pasture and butchered it. He told the witness Hall that he could get more cattle than he could dispose of. What followed and what connection Hall had with it is not revealed, but this testimony by Hall and that of Luther Sloan constitute the State's case.

We find no evidence which will corroborate the testimony of Hall to any degree. Had the evidence given by Luther Sloan placed the date at a time consistent with the disappearance of the calf and the statement made to Hall by appellant, it might, under some circumstance, be considered as corroborating evidence. The time element is not the only weakness in it as the record appears before us, but it does make it an impossibility.

We recognize the chances for error in dates and the possibility that Mr. Smith might have been mistaken as to the time his calf disappeared, as well as the fact that Luther Sloan could have been mistaken as to the time he saw the things take place which he testified about, but evidence is evidence and this court is without power to change it in order to make it consistent, particularly in the nature of the issue before us. If an issue gets in the way of a proven fact it may become possible to excuse it or explain it away, but that is quite different to the problem with which the State is confronted in the instant case. Here we are called upon to rebuild it so as to construct something which the evidence does not do. We are unable to so view the testimony.

Under the court's charge and in view of the case as it is before us, we think the jury did not have sufficient corroborating testimony to support the witness Thomas Hall and for this the judgment of the trial court will be reversed and remanded.

A question of importance in this case which we think must be decided arises on enhancement of the penalty.

Appellant had been convicted of a similar offense and served a term in the penitentiary. Subsequently the Governor granted him a full pardon. An allegation is found in the indictment setting out the former conviction and, upon proof of such former final conviction for a similar offense, appellant was given the highest penalty for cattle theft.

It is presented that because of the full pardon granted to him by the Governor, the State cannot now utilize that conviction for the purpose of enhancing his penalty in the present case. That this court has so held by a majority opinion in Scrivnor v. State, 20 S. W. (2d) 416, must be conceded. The very question

was definitely decided in favor of appellant's contention in that case.

In view of the wording of our statute and in view of the decisions of our courts in this and in other states, as well as of the Supreme Court of the United States, we feel that the question is before us to be passed on and that we must do so in the light of the authorities and reasoning, even those referred to in the Scrivnor case, and that in so doing we are at liberty to follow the Scrivnor case or refuse to do so.

Blackstone has discussed the question and, of course, from the standpoint of the English Government and the relationship which the King bore to the decisions of the courts at the time he wrote, not taking into account a government like ours with three distinct and separate branches, the Legislative, the Executive and the Judicial. The King had the power, upon appeal to him, to set aside the orders of the court. He alone could do so for the courts had no power over their final judgments. The executive in our form of government has no such power. He can pardon, but, "as the very essence of a pardon is forgiveness or remission of penalty, a pardon implied guilt; it does not obliterate the fact of the commission of the crime and the conviction therefor; it does not wash out the moral stain. As has been tersely said, 'it involves forgiveness and not forgetfulness," 46 C. J. 1193; U. S. v. Swift, 186 Fed. 1002; State v. Hazzard, 247 P. 957; Sipanek v. State, 272 S. W. 141.

In U. S. v. Swift, supra, it is said at page 1016: "While amnesty or pardon obliterates the offense to such an extent that for all legal purposes the one time offender is to be relieved in the future from all its results; it does not obliterate the acts themselves; it does not close the judicial eye to the fact that once he had done the acts which constituted the offense."

In State v. Edelstein, 262 P. 622, (at page 630), it is said that the weight of authority is against appellant's contention.

While earlier editions of Bishop on Criminal Law may be quoted as it was in the Scrivnor case in favor of that opinion, the 9th Edition, par. 963, subdivision 4, says:

"A person who has received clemency but instead of reforming persists in his evil ways certainly should not as to a subsequent offense be treated better than if the pardon had been denied. Accordingly the Kentucky court has held that such a pardon does not relieve him from any penal consequences resulting from his subsequent offenses, and this reasoning has

been adopted by the United States Supreme Court."

We may concur in a statement that Mr. Bishop himself was more learned than those responsible for the revision of his work. We must also consider that they had additional authorities, and if and when they chose to write differently, we may well consider that they had good authority for doing so. They had what Mr. Bishop himself had said, and they had the opinions of learned judges of all the courts of the land who, no doubt, had thoroughly considered the view taken in the early work as well as the changing conditions and purposes under and for which pardons are now being granted. If the Supreme Court of the United States and the other courts have departed from the line of thought earlier noticed by Mr. Bishop, we will not be embarrassed to do so, particularly where, as in this case, the reasoning appeals to us as being sustained and in accord with the intention of the Legislature.

We will note some of the authorities considered by the Supreme Court of the State of Washington in the Edelstein case which we think support that conclusion and impel us to follow it as the law of this State.

Herndon v. Commonwealth, (Ky.) 48 S. W. 989, held that: "The pardon relieved the convict of the entire penalty incurred by the offense pardoned, and nothing less or more. It neither did nor could relieve from any penal consequence resulting from a different offense, committed after the pardon, and never pardoned. The increased punishment prescribed by the statute for the subsequent offense was no part of the penal consequences of the first offense, but applied exclusively to the last, as aggravated by its repetition of the same crime. * * * In any aspect, the augmented punishment is for the last, and not at all for the first, offense; * * *."

One of the leading cases on the subject is People v. Carlesi, 139 N. Y. S. p. 309. In it the court quotes with approval from an opinion by Mr. Justice Fields in Ex parte Garland, 18 L. Ed. 366. The New York court approved the holding to the effect that the conviction was not obliterated by the pardon, but remained a fact in the past history of defendant, holding that the punishment for the second offense was solely for that and not at all for the first offense, otherwise the statute providing for increased punishment for second offenses would be unconstitutional. This is further supported by Cosgriff v. Craig, 88 N. E. 38. It is further said that the fact of a former conviction is an element merely in determining the criminality of the

second offense. It is then observed that the Legislature of New York, as it has done in Texas, viewed one who commits a crime after having been convicted of another crime as a greater offender than he would have been had he never committed the first offense and the punishment is for the second offense, to which a greater degree of criminality is not lessened by the fact of a pardon which affords him an opportunity to become a law-abiding citizen. The Carlesi case went to the Supreme Court of the United States, (see Carlesi v. New York, 233 U. S. 51; 58 L. Ed. 843), and was upheld in an opinion by Justice White, who undoubtedly approved of the reasoning of the New York courts and the authorities therein relied upon.

The enhancement statute is Article 62 of the Penal Code of Texas, which reads as follows:

"If it be shown on the trial of a felony less than capital that the defendant has been before convicted of the same offense, or one of the same nature, the punishment on such second or other subsequent conviction shall be the highest which is affixed to the commission of such offenses in ordinary cases."

Whatever might have been the force and effect of the pardon as it originated in an early date appears to the writer to be immaterial. In our state, as in the other states of the Union, the executive is not given appellate jurisdiction over the acts of the judicial branch of the government, and without which he can have no power to destroy its judgments and decrees. He must take them as he finds them. In penal cases it becomes the duty of the executive branch to enforce the laws as written and interpreted. Clemency power is vested in the governor to the extent only that he can remit fines imposed which remain uncollected and discharge the convict from further penal service. Prior to his proclamation so doing he exercises no influence on the judgment of conviction. He has no power to restore the convict to his license which may have been cancelled by reason of his conviction. He cannot set aside divorce which the convict's spouse has obtained on the ground of such conviction. He cannot restore him in his social standing contrary to public opinion and the edicts of the social order, or societies to which he once belonged. In civil action for libel the publisher of the story of plaintiff's conviction may prove the fact even though a full pardon has been granted.

Our own court has recognized the difficulty of its former decisions in writing on the subject in Warren v. State, 74 S. W. (2d) 1006, wherein it was called upon to apply the suspended

sentence law, but avoided the impossible situation by the fact that the pardon therein questioned was a conditional one. Warren had asked for a suspended sentence which the trial court refused to submit to the jury because he had been convicted many years previously of another felony. In behalf of his application Warren submitted a pardon by the governor, by reason of which he claimed, in accordance with the holding of this court, that his former conviction had been entirely wiped out. It recited on its face that Warren was granted a full pardon, restoration of citizenship and the right of suffrage. It was granted before the expiration of his sentence and was to become effective upon his discharge. Holding this to be a conditional pardon even though time had wiped it out, the judgment of the trial court was affirmed. Judge Hawkins concurred in the affirmance, but dissented on the reasoning adopted and, consistent with his dissent in the Scrivnor case, said that the trial court would be correct even if the pardon be wholly unconditional.

If the majority had been willing to say in the Warren case that the pardon of the governor wiped out the existence of the fact so that the applicant for a suspended sentence may file his affidavit stating that he had never been convicted of a felony in this State or any other state, they could easily have clarified the situation by so holding. Undoubtedly, the opinion discloses an unwillingness to do so. If the full and unconditional pardon of the governor wipes out the existence of the fact for one purpose it must have wiped it out for all purposes.

Again this court has consistently held that a witness may be examined as to his previous conviction for the purpose of enlightening the jury as to his credibility and this though the governor had granted him a full and unconditional pardon. We find no condition under which our courts have ever held the governor's pardon to effectively wipe out the existence of a fact, save and except in the application of the enhancement statute. Our holding herein will be consistent with the holding on the same subject in all other cases.

The governor can forgive the penalty, but he has no power to direct that the courts shall forget either the crime or the conviction. The pages written by the court's decree are in the minutes still.

> "The Moving Finger writes; and, having writ,
> Moves on; nor all your Piety nor Wit
> Shall lure it back to cancel half a Line,
> Nor all your Tears wash out a Word of it."

All former decisions of this court holding contrary to the view herein expressed are hereby overruled, and the reasoning of the Supreme Court of the State of Washington in the Edelstein case, supra, and the courts of the State of New York and of the Supreme Court of the United States in the Carlesi case are each herein referred to and adopted as the conclusion of this court on the question herein discussed.

Another question raised by the appeal is on the validity of the indictment. J. Marcus Smith, the injured party, was foreman of the grand jury which indicted appellant. No motion was made and no steps taken at the time of the impaneling of the grand jury to have him removed therefrom, but it is now contended that his service on the grand jury invalidated the indictment. The question has been passed on and we are unable to agree with appellant's contention. (Staton v. State, 93 Texas Cr. Rep. 356; 248 S. W. 356.)

For the insufficiency of the evidence the judgment of the trial court is reversed and the cause remanded.