Warren DIAZ, Sr., d/b/a Diaz Trucking Company, Plaintiff-Appellant,

v.

Robert E. CHASEN et al., Defendants-Appellees.

No. 80–3605
Summary Calendar.

United States Court of Appeals, Fifth Circuit. Unit A

April 13, 1981.

Peter J. Compagno, New Orleans, La., for plaintiff-appellant.

John Volz, U. S. Atty., Michaelle Pitard, Asst. U. S. Atty., New Orleans, La., for defendants-appellees.

Before CHARLES CLARK, REAVLEY and JERRE S. WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant, Warren Diaz, for several years had held a customhouse cartman's license, doing business in New Orleans, Louisiana. On January 9, 1979, he was convicted of the possession of stolen goods and received a one-year sentence of imprisonment, suspended, with a two-year inactive probation. One June 29, 1979, his sentence was terminated by order of the Louisiana court in order to bring about an automatic pardon and in an attempt to enable him to obtain or retain his customhouse cartman's license. Article IV, Section 5(E)(1) of the Louisiana Constitution provides: ". . . [A] first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor."

On October 1, 1979, the District Director, U.S. Customs, notified Mr. Diaz that it was proposed to revoke his cartman's license pursuant to § 112.30(a)(5) of the Customs Regulations which authorizes the District Director to revoke or suspend a cartman's license if: "the holder of such a license or an officer of the corporation holding such a license is convicted of a felony, or is convicted of a misdemeanor involving theft, smuggling or a theft-connected crime."

Pursuant to Customs Regulations Mr. Diaz was given a hearing on November 1, 1979, before a designated hearing officer. The hearing officer recommended that his license be revoked even though the automatic pardon under the Louisiana constitutional provision had taken effect because of the termination of his sentence by court order. This recommendation was adopted by the Commissioner of Customs who ordered that Diaz' license be revoked effective at midnight June 2, 1980.

Diaz brought this suit in federal court for a temporary restraining order, a preliminary injunction, a permanent injunction, and declaratory relief, challenging the action of the Commissioner of Customs in revoking his customhouse cartman's license. His contention is that his pardon from the felony conviction deprives the Commission of the authority to revoke his license. The district court dismissed his action, and he appeals.

We affirm. The sole question in this appeal is whether the automatic pardon provision of the Louisiana statute has rendered ineffective the Customs Commissioner's decision to revoke appellant's license.

Our decision must turn upon the effect of the particular pardon which Diaz received automatically under the Louisiana constitutional provision. In *Gurleski v. United States*, 405 F.2d 253, 266 (5th Cir. 1968), this Court said: "A pardon for any other reason than subsequent proof of innocence does not obliterate the defendant's previous transgressions particularly as they may bear on his present character and veracity. Any number of reasons may lie behind the granting of an executive pardon, but the granting of a pardon does not in itself indicate any defect in previous convictions. Neither does it negate any bearing that they may have on present credibility."

It is now the established law that Congress and the administrative agencies acting pursuant to congressional mandate decide what effect the federal government desires to give to state pardons. Some federal statutes give broad effect to state pardons and others narrow effect. The actual nature and content of a state pardon, on the other hand, is determined by the state. These principles are thoroughly set out in *United States v. Matassini*, 565 F.2d 1297 (5th Cir. 1978). In that case this Court held that a "full and complete" state pardon exempted the defendant from criminal liability for receipt and possession of a firearm. The Court pointed out in its opinion that the pardon had been granted before the Omnibus Crime Control and Safe Streets Act of 1968 which had narrowed the effect on the federal law of a pardon for a felony by requiring that the governor of the state could make the pardon effective to allow later possession of a firearm only by granting specific authority within the terms of the pardon itself.

The nature of the pardon and the nature of the federal law become critical under the precise analysis of the particular situation required by *Matassini.*

It is well established in Louisiana law that the automatic pardon which is involved in this case is not the kind of pardon which wipes the criminal conviction off the books. In *State v. Adams,* 355 So.2d 917, 922 (La. 1978), the Supreme Court of Louisiana stated that while the automatic pardon restores some privileges, this does not mean that it "restores the status of innocence to the convict who has merely served out his sentence." This conclusion comports with the obvious nature of the pardon as a rehabilitative device which does not cast any shadow on the conviction itself.

The Customs Regulation under which appellant's license was revoked contains no specific reference to the effect of a pardon upon the revocation of a license for conviction of a felony. Both the Commissioner of Customs and the District Court interpreted the regulation as treating the convicted felon as still having vestiges of the conviction under the Louisiana automatic pardon. We note the wisdom of accepting an administrative agency's own interpretation of the regulations which it creates. It has been well settled for many years that in construing administrative regulations "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). *See Homan & Crimen, Inc. v. Harris,* 626 F.2d 1201 (5th Cir. 1980). Here the interpretation is not erroneous but is a sensible and reasonable one. Nor is it internally inconsistent.

It follows that the Commissioner of Customs was within the scope of statutory authority and Customs Regulations in revoking appellant's customhouse cartman's license.

AFFIRMED.