**Delmas W. DIXON, Plaintiff,**

v.

**K. P. McMULLEN, Jr., et al., Defendants.**

**Civ. A. No. 4–80–443.**

United States District Court, N. D. Texas, Ft. Worth Division.

Nov. 18, 1981.

David R. Richards and Mary F. Keller, American Civil Liberties Union, Austin, Tex., for plaintiff.

Mark White, Atty. Gen. of Tex., Ann Kraatz, Asst. Atty. Gen., Gerald C. Caruth, Asst. Atty. Gen., Austin, Tex., for defendants.

## MEMORANDUM OPINION

BELEW, District Judge.

This is a civil rights case. Plaintiff, a convicted ex-felon, who was pardoned twenty years later by the Governor of the State of Texas, alleges that his constitutional rights were abridged because he was denied certification as a police officer by the Texas Commission on Law Enforcement Officer Standards and Education. The trial was before this Court and lasted one day. The following findings of fact and conclusions of law are entered according to Federal Rules of Civil Procedure 52(a) and 58.

### I. Factual Background

These material facts are not in dispute:

1. Delmas W. Dixon was born on October 13, 1938 in Fort Worth, Texas.

2. In 1957, Plaintiff was honorably discharged from the United States Navy after two years of service.

3. On November 14, 1960, Plaintiff pled guilty to a charge of robbery in Tarrant County, Texas, and was sentenced to confinement in the State Penitentiary for five (5) years. That sentence was probated.

4. On March 10, 1964, Delmas Dixon was discharged from probation. Consequently, Plaintiff's motion for new trial was granted, and his case dismissed in accordance with Tex.Code Crim.Pro.Ann. art. 42.-12(7)(Vernon 1979).

5. In 1975, Plaintiff entered the River Oaks Police Academy, and later completed the training. On either false or incomplete information submitted to the Texas Commission on Law Enforcement Officer Standards and Education [hereinafter "the Commission"] relating to his criminal record, Plaintiff was certified by the Commission. Thereafter, he began his duty with the City of River Oaks, Texas as a reserve police officer.

6. From 1976 until 1979, Plaintiff worked as a full-time officer with the City of Azle, Texas, eventually rising to the rank of Patrol Sergeant. In 1979, Mr. Dixon resigned and re-entered private business.

7. On June 9, 1980, Plaintiff was granted a general pardon by the Governor of the State of Texas. However, the pardon was not granted on the basis of subsequent proof of innocence.

8. In approximately August, 1980, Plaintiff was re-hired by the City of River Oaks, Texas. He worked a couple of weeks and then resigned. On November 17, 1980, Plaintiff was denied a certification to be a reserve police officer for the City of Blue Mound, Texas. The denial was based on Plaintiff's prior felony conviction.

9. The Commission is delegated the responsibility by the Texas Legislature to establish minimum educational, training, physical, mental, and moral standards for admission to employment and certification as a reserve police officer, pursuant to Tex. Rev.Civ.Stat.Ann. art. 4413(29aa)(Supp.19-80).

10. Article 4413(29aa) provides that no person convicted of a felony may be certified as a police officer.[1] Article 4413(29aa) also provides that once certified, a police officer retains such certification, absent its revocation by the Commission. Should a police officer resign, be fired, or his ap-

pointment be terminated for whatever reason, his certification automatically would expire. If the officer sought appointment with another law enforcement agency, he would be required to once again seek certification.

## II. Parties

Plaintiff Delmas A. Dixon is a citizen of Fort Worth, and Tarrant County, Texas.

Defendant Ken P. McMullen, Jr., is the Chief of Police of Blue Mound, Tarrant County, Texas. He did not hire Plaintiff because he had been denied certification pursuant to the Texas Statute. Defendant McMullen is sued in his official capacity only.

Defendant Fred Toler is the Executive Director of the Texas Commission on Law Enforcement Officer Standards and Education, and as such, is responsible for the enforcement of its rules and regulations. He is sued in his official and individual capacity.

Defendants Dewey Presley, Dan Saunders, Walter Rankin, James Adams, Dr. Kenneth Ashworth, Allan Bowen, David Collier, Henry Gardner, Richard Ingram, Rex Kelly, Emil Peters, Mark White, and Louise Wing are responsible for establishing rules and regulations for the certification of police officers. They are sued in their individual and official capacities.

Defendant State of Texas is sued as the Governmental entity responsible for depriving Plaintiff of his civil rights by enforcing a statute which automatically excludes any and all felons from consideration as police officers.

## III. Plaintiff Allegations

Plaintiff asserts he should be certified as a police officer because of the effect of his pardon. As a result of the denial, he alleg-

---

1. Sec. 8A. (a) No person who has been convicted of a felony under the laws of this state, or the United States may be certified by the Commission as qualified to be a peace officer, or a jailer or guard at a county jail.

(b) Final conviction of a felony under the laws of this state, another state, or the United States disqualifies a person previously certified by the Commission as qualified to be a peace officer, or a jailer or guard at a county jail, and the Commission shall immediately revoke the certification of a person so convicted.

es violations of the equal protection and due process clauses. Under the equal protection argument, Plaintiff contends (1) there is no rational relationship underlying his criminal record and his ability to be an effective police officer; (2) he was rejected solely because of his felon status, and thus arbitrarily and irrationally treated differently; (3) that the statute is simultaneously overbroad (not sufficiently specifically tailored to limit the statute to conform to a legitimate state interest) and underbroad (allowing those with numerous misdemeanors to be police officers, while denying those with one felony); and (4) arbitrarily certifying those ex-felons before 1975, yet excluding those after 1976.

Under the due process argument, Plaintiff asserts his procedural due process rights were violated because no hearing was allowed. Specifically, that such factors as the nature of the offense, recentness of the offense, subsequent dismissal from the court's docket, Plaintiff's involvement in the offense, any rehabilitation, i.e., his unblemished record for twenty years, public service as a police officer for four years, and a full pardon by the Governor of Texas, were not considered in order to provide for an individualized analysis. Thus, Plaintiff alleges there is no possibility of demonstrating that he now satisfies the underlying purposes of the statute.

Plaintiff prays for this Court to assume jurisdiction, to restrain and permanently enjoin Defendants from enforcing the statute, to determine the statute unconstitutional, and to award damages and attorney's fees.

### IV. Defendants Response

Defendants assert several contentions: (1) the Court should abstain to first permit Texas courts to consider the issues of state law; (2) the complaint fails to state a cause of action against these Defendants in their individual capacity; (3) the Court lacks jurisdiction to entertain a suit for damages against the State of Texas and the individual Defendants in their official capacity; (4) a pardon based on anything besides subse-

quent proof of innocence is irrelevant; (5) there is no legal support for a right to a hearing and a case-by-case analysis; (6) there is no violation of the equal protection clause as Plaintiff is not a member of a suspect classification, and thus the concern for public health, safety, and morals underscores the rational relationship standard; (7) there is no procedural due process violation, as the statute is not an arbitrary and unreasonable exclusion; and (8) Defendants assert this is a frivolous lawsuit and request attorney's fees.

### V. Jurisdiction

This case is brought under 42 U.S.C. §§ 1983, 1988, 28 U.S.C. §§ 1331, 1343, 2201, 2202, and the Fourteenth (14th) Amendment. There was no request made for a three-judge panel, as possible under 28 U.S.C. §§ 2281, 2284. *Connor v. Hutto*, 516 F.2d 853, 855 (8th Cir. 1975); *Mildner v. Gulotta*, 405 F.Supp. 182, 184 (E.D.N.Y. 1975), *affirmed*, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976). The Court will not abstain, *see Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981); *High Ol' Times v. Busbee*, 621 F.2d 135 (5th Cir. 1980); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *U. S. v. Composite State Bd. of Med. Examiners*, 656 F.2d 131 (5th Cir. 1981), and regarding the exhaustion doctrine, the Court is satisfied Plaintiff has met the applicable principles, *see generally: Patsy v. Florida Eastern University*, 634 F.2d 900 (5th Cir. 1981). This Court, therefore, notes probable jurisdiction.

#### Issue 1

What is the legal effect, under Texas law, of a pardon granted by the Governor?

### VI. Pardon

The Texas Constitution gives the Governor of Texas power to grant pardons in criminal matters. "In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and ad-

vice of the Board of Pardons and Paroles, ..., to grant ... pardons ...." Article Four, Section Eleven; *see also*: Tex.Code Crim.Pro.Ann. art. 48.01 (Vernon 1979); *Hankamer v. Templin*, 143 Tex. 572, 187 S.W.2d 549, 550 (1945). The only civil power he possesses is to remit fines and bond forfeitures.

The meaning of a pardon is both interesting and historical. Originally, under English law, there were several kinds of pardons: general, special or particular, conditional, absolute, and statutory. The King of England had the power to set aside orders of the Court. He alone could do so for the Court had no power over its final judgment. As Lord Coke once wrote, "A pardon is a work of mercy, whereby the King, either before attainder, sentence, or conviction, or after, forgiveth any crime, offense, punishment, execution, right title, debt, or duty, temporal, or ecclesiastical." 3 Inst. 233. Prior to the Revolution, the American Colonies, being in effect under the laws of England, were accustomed to the exercise of it in various forms. Hence, when the words "to grant pardons" were used in the United States Constitution, they conveyed to mind the authority as had been exercised by the English Crown. *See* Article Two, Section Two, Clause One. No effort was made to define or change its meaning. Years passed and differing language in cases caused confusion among the courts as to the American effect of a pardon. *Compare: Ex Parte Garland*, 4 Wall 333, 380, 71 U.S. 333, 380, 18 L.Ed. 366 (1860) ("blots out the existence of guilt") with *Burdick v. United States*, 236 U.S. 79, 91, 35 S.Ct. 267, 269, 59 L.Ed. 476 (1914) ("confession of guilt implied in the acceptance of a pardon"); and *Bennett v. State*, 24 Tex.App. 73, 79, 5 S.W. 527, 529 (1887) (stating a full pardon absolves the party from all legal consequences of his crime) with *Jones v. State*, 141 Tex.Crim. 70, 147 S.W.2d 508, 510 (1941) ("does not obliterate the fact of the commission of the crime").

Today, the offenses for which a pardon is usually requested are burglary, rape, robbery, forgery, drugs, and occasionally even murder. The process generally works this way. After serving sentence (either full, probated, etc.), anyone may make application for a pardon. The applicant forwards his request, along with letters of recommendation, to the Board of Pardons and Paroles. A decision is made; if the Board denies the request, the process is of course over, but the applicant may apply again. If the Board approves the request, it is forwarded to the Governor's Clemency Staff.[2] The Staff's recommendation is then almost always approved by the Governor.[3]

■ The undisputed legal effect of a pardon is to restore the civil rights to an ex-felon (suffrage, jury service, and the chance to seek public office). *See Easterwood v. State*, 34 Tex.Crim. 400, 31 S.W.

2. In the year September 1, 1978 to August 31, 1979, the Board received 3986 requests, recommended 162, and the Governor's office (Dolph Briscoe and William P. Clements, Jr., after January 1, 1979) approved 90. In the year September 1, 1979 to August 31, 1980, the Board received 3311 requests, recommended 144, and the Governor's office approved 91. In the year September 1, 1980, to August 31, 1981, the Board received 3142 requests, recommended 157, and the Governor's office approved 118. Statistics courtesy of the Office of the Board of Pardons and Paroles, Mrs. Gladys Sommers, Austin, Texas and the Office of the Governor; Mr. John McCollum, Assistant General Counsel, Austin, Texas; October, 1981.

3. In lobbying against a broad interpretation of a pardon, the Governor's office expressed fear that if the door was opened for one group of individuals (pardoned ex-felons), then all ex-felons might assert exceptions to the rule. The argument also has been raised that many ex-felons, who might seek a "tough-guy" line of work, now go into the Army. However, if exceptions to this statute were allowed, so goes the thinking, they might apply for police officer work. In fact, the Governor's office contended and strongly suggested that if they knew many of those now seeking pardon status could in fact become police officers, their percentage of approvals would significantly drop. That feeling is mainly based on the belief that while many applicants might list their reasons for wanting a pardon as the right to vote, the desire to clear their family name, etc., at the time of the application; in two years or whenever, after they had been granted a pardon, circumstances might have changed and they would then be eligible for officer certification.

294, 296 (1895); 44 *Tex.Jur.2d Pardon, Reprieve, Etc.*, § 13 (1963); *Tex.Att'y Gen.Op.*, No. MW–148 (1980). However, the Governor cannot overrule the judgment of a court of law. He has no "appellate" jurisdiction. *Watkins v. State*, 572 S.W.2d 339, 341 (Tex. Crim.App.1978); *Jones v. State, supra*, 141 Tex.Crim. 70, 147 S.W.2d at 511. There can be no doubt but that a final judgment was entered against the ex-felon. Regardless of the post-judgment procedural maneuvering,[4] a final conviction does not disappear. A pardon implies guilt. Texas Courts may forgive, but they do not forget. The *fact* is not obliterated[5] and there is no "wash". *Diaz v. Chasen*, 642 F.2d 764, 765–66 (5th Cir. 1981); *Gurleski v. United States*, 405 F.2d 253, 266 (5th Cir. 1969), *cert. denied*, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769, *rehearing denied sub nom. Smith v. United States*, 396 U.S. 869, 90 S.Ct. 37, 24 L.Ed.2d 124 (1969); *Watkins v. State, supra*, 572 S.W.2d at 341; *Ex Parte Smith*, 548 S.W.2d 410, 414 (Tex.Crim.App.1977). Moreover, the granting of a pardon does not in any way indicate a defect in the process. It may remove some disabilities, but does not change the common-law principle that a conviction of an infamous offense is evidence of bad character.[6] *Bennett v. State, supra*, 24 Tex.App. 79, 5 S.W. at 529.

The bottom line on the effect of a pardon is that it restores some civil rights, but not all.[7] The following decisions establish that a prior conviction for which one has received a pardon absent a showing that such pardon was granted for subsequent proof of innocence, may be utilized for purposes of enhancement, *Donald v. Jones*, 445 F.2d 601, 606 (5th Cir.), *cert. denied*, 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 543 (1971); *Watkins v. State, supra*, 572 S.W.2d at 341; impeachment,[8] *Gurleski v. United States, supra*, 405 F.2d at 266; *Sipanek v. State*, 100 Tex.Crim. 489, 272 S.W. 141, 142 (1925); denial of bail to a habitual offender, *Ex Parte Smith, supra*, 548 S.W.2d at 414; denial of probation, *Watkins v. Thomas*, 623 F.2d 387, 388 (5th Cir. 1980); proving possession of a firearm by a convicted felon, *Runo v. State*, 556 S.W.2d 808, 809–10 (Tex.Crim.App.1977); *United States v. Castellana*, 433 F.Supp. 1309, 1316 (M.D.Fla.1977); and proving possession of burglary tools by a convicted felon, *Logan v. State*, 448 S.W.2d 462, 463–

---

**4.** *See* Tex.Code Crim.Pro.Ann. art. 42.12(7) which states:

> At any time, after the defendant has satisfactorily completed one-third of the original probationary period or two years of probation, whichever is the lesser, the period of probation may be reduced or terminated by the court. Upon the satisfactory fulfillment of the conditions of probation, and the expiration of the period of probation, the court, by order duly entered, shall amend or modify the original sentence imposed, if necessary, to conform to the probation period and shall discharge the defendant. In case the defendant has been convicted or has entered a plea of guilty or a plea of nolo contendere, and the court has discharged the defendant hereunder, such court may set aside the verdict or permit the defendant to withdraw his plea, and shall dismiss the accusation, complaint, information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted or to which he has pleaded guilty except that proof of his said conviction or plea of guilty shall be made known to the court should the defendant again be convicted of any criminal offense.

and the *Tex.Att'y Gen.Op.*, No. MW–148 (1980) analysis of it.

**5.** An employee, for example, could not say to an employer during the hiring process that he had *never* been *convicted* of a felony.

**6.** *See also: Doe v. Webster*, 606 F.2d 1226, 1239 n.51 (D.C.Cir.1979) One must also consider the liability exposure of the State. If it were commanded to clothe an ex-felon with the general authority a police officer carries, and he were to abuse that (i.e. as an example, a pardoned burglar or rapist), a private citizen could turn around and sue the state claiming it knowingly allowed such to occur.

**7.** Many ex-felons may and should be able to vote, etc.; they just cannot be certified as police officers.

**8.** One of the most important assets a police officer possesses is his ability to testify about an event. A jury will usually accord his testimony significant credibility. However, an ex-felon police officer loses that testimonial power. Although his pardon may be used to bolster on re-direct, most likely the damaging impression has set in.

64 (Tex.Crim.App.1969). Additionally, federal laws do not necessarily obey the effect of a state pardon. *See also: Diaz v. Chasen, supra,* 642 F.2d at 765, *United States v. Padia,* 584 F.2d 85, 86 (5th Cir. 1978); *Yacovone v. Bolger,* 645 F.2d 1028, 1035–36 (D.C. Cir.1981); *United States v. Castellana, supra,* 433 F.Supp. at 1317.

The Court cites six cases as consistent with its reasoning, *Barsky v. Board of Regents of N.Y.,* 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829 (1953) (New York statute stated a physician convicted of any crime would have his license suspended); *Diaz v. Chasen,* 642 F.2d 764 (5th Cir. 1981) (A customhouse cartman's license was revoked as a result of his felony conviction of possession of stolen goods, even though a Louisiana statute automatically pardoned a first offender upon completion of his sentence); *Hankamer v. Templin,* 143 Tex. 572, 187 S.W.2d 549 (Tex. 1945) (Where an attorney had been disbarred following his conviction of a felony, a pardon by the Governor did not reinstate his privilege to practice law, nor restore his former office as an attorney); *Cooper v. Texas Board of Medical Examiners,* 489 S.W.2d 129 (Tex.Civ.App.—El Paso 1973, writ ref'd n.r.e.), *cert. denied,* 414 U.S. 1072, 94 S.Ct. 585, 38 L.Ed.2d 478 (1974) (Doctor was convicted of a felony offense; the Court found Tex.Rev.Civ.Stat.Ann. art. 4505(2) (1976) gave sufficient power to the State Board of Medical Examiners to refuse, cancel, revoke, or suspend a license for such an offense); *Jones v. State,* 141 Tex.Crim. 70, 147 S.W.2d 508 (1941); *Dee Wayne Thompson v. Texas Commission on Law Enforcement Officer Standards and Education,* No. 311, 698 (Dist.Ct. of Travis County, 200th Judicial District of Texas, April 24, 1981) (Plaintiff sought judicial review of an administrative order entered by the Commission revoking his Police Officer Qualification certificate previously issued as a result of his felony conviction for the offense of arson); and one as distinguishable, *Warren v. State,* 127 Tex.Crim. 71, 74

S.W.2d 1006 (1941) (In *Jones,* the Court of Criminal Appeals analyzed the earlier *Warren* decision and stated if that majority had desired to assert a pardon wiped out the existence of the fact, it easily could have clarified its opinion; undoubtedly, the majority did not disclose such a willingness.).

In conclusion, this Court has to wonder if maybe there should not be categories of pardons. Those might include a conditional pardon (limited to any specific situation), a general pardon (everything but the earlier enumerated exceptions and police officer certification), and an unconditional pardon (i.e. a total elimination of *any* disability). Such a system would have prevented this problem, but more importantly, any future ones which could be far more delicate.

*Issue (2)*

Did the Texas Legislature, which automatically excluded any convicted felon [9] from the possibility of being certified as a police officer, violate Plaintiff's Fourteenth Amendment constitutional rights (equal protection under the laws and procedural due process)?

## VII. Equal Protection

 This case involves the Fourteenth Amendment constitutional rights. When a statute affects everyone's rights, it is a question of substantive due process (Fifth Amendment). When a statute treats some people differently than others, then it is a matter of equal protection. *Thompson v. Gallagher,* 489 F.2d 443, 447 (5th Cir. 1974); *Upshaw v. McNamara,* 435 F.2d 1188, 1190 n.3 (1st Cir. 1970). The Fourteenth Amendment to the Constitution of the United States provides, in pertinent part, "... nor shall any state deprive any person of life, liberty, or property, ...; nor deny to any person within its jurisdiction the equal protection of the laws." It stands for the proposition, therefore, the Government must act, when it acts, in a manner which is neither arbitrary nor unreasonable.

**9.** Until 1975, the Commission excluded all felons except one who had pled guilty, served his sentence, was in fact innocent, and had received a full pardon. Plaintiff would not have been eligible for the exception as he pled guilty to a charge of robbery, and his sentence was probated, so that he never served any "time". (See Plaintiff's exhibits 14, 15, and 17).

 There exists three standards of review under traditional Fourteenth Amendment analysis. *Seoane v. Ortho Pharmaceuticals, Inc.*, 660 F.2d 146 (5th Cir. 1981). A challenged classification is subject to strict scrutiny only if a suspect class is disadvantaged, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); *Oyama v. California*, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (national origin); or, when it impermissibly interferes with the exercise of a fundamental right, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right to travel); *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (right to vote); *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (marriage); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (freedom of association); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (right of privacy). If gender classification or illegitimacy is involved, then there must be a fair and substantial relation to important government objectives, *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), respectively. Any other designation would only require a rational relation to a legitimate governmental interest. *San Antonio School District v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

 The Supreme Court's standard of less than strict scrutiny "... has consistently been applied to state legislation restricting the availability of employment opportunities," *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Smith v. Fussenith*, 440 F.Supp. 1077, 1079 (D.Comm.1977), as well as to classifications based on a criminal record. *Miller v. Carter*, 547 F.2d 1314, 1321 (7th Cir. 1977) (Campbell, concurring), *affirmed by an equally divided court*, 434 U.S. 356, 98 S.Ct. 786, 54 L.Ed.2d 603 (1978); *Kindem v.*

*City of Alameda*, 502 F.Supp. 1108, 1111 (N.D.Calif.1980). Thus, in the context of occupational licensing, the Supreme Court has formulated a test which requires that any qualification only "have a rational connection with the applicant's fitness or capacity" to perform the job. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). In other words, a state may regulate professions which affect the public interest as long as the regulation rationally furthers a legitimate state purpose or interest.

 Turning to the facts and applying the minimal rationality standard, the question is: can one uphold the statute in a manner consistent with the equal protection clause? *Reed v. Reed*, 404 U.S. 71, 74, 92 S.Ct. 251, 253, 30 L.Ed.2d 225 (1971); *Andrews v. Drew Municipal Separate School District*, 507 F.2d 611, 614 (5th Cir. 1975), *cert. dismissed*, 425 U.S. 559, 96 S.Ct. 1752, 48 L.Ed.2d 169 (1976). Some cases have struck down various statutes on the ground there was insufficient evidence presented to justify the classification. However, lest one forgets the late 1930's, Courts do not sit as a super-legislature to judge the considerations of legislative policy made in areas that neither affect fundamental rights nor proceed along suspect lines. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Ferguson v. Skrupa*, 372 U.S. 726, 729, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93 (1963); *West Coast Hotel v. Parrish*, 300 U.S. 379, 399, 57 S.Ct. 578, 585, 81 L.Ed. 703 (1937); *Laketon Asphalt and Refining, Inc. v. United States*, 476 F.Supp. 668, 675 (N.D.Ind.1979). A Legislature has great latitude in making statutory classifications involving social or moral legislation. *United States v. Neary*, 552 F.2d 1184, 1189 (7th Cir.), *cert. denied*, 434 U.S. 864, 98 S.Ct. 197, 54 L.Ed.2d 139 (1977); *United States v. Weatherford*, 471 F.2d 47, 51 (7th Cir. 1972), *cert. denied*, 411 U.S. 972, 93 S.Ct. 2144, 36 L.Ed.2d 695 (1973); *Laketon Asphalt and Refining, Inc. v. United States, supra*, 476 F.Supp. at 675.

There is no constitutional right to public employment.[10] *McGarvey v. District of Columbia*, 468 F.Supp. 687, 690 (D.C. 1979); *Carlyle v. Sitterson*, 438 F.Supp. 956, 959 (D.N.C.1975). A Government must have authority to scrutinize the hiring of personnel based on conduct occurring prior to their employment. *Dew v. Halaby*, 317 F.2d 582, 586 (D.C.Cir.1963); *Carlyle v. Sitterson, supra*, 438 F.Supp. at 963. It is a vital part of the state's police power. *Barsky v. Board of Regents of N.Y., supra*, 347 U.S. at 449, 74 S.Ct. at 654 (1953). The rationale is to insure that those persons publicly employed in emergency or dangerous situations are sober and alert, and possess qualities such as honesty, integrity, reliability and obedience to the law.[11] After all, state police are charged with the enforcement of the law, not for themselves or their clients as in private practice, but for the benefit and safety of people at large. In *Talent v. City of Abilene*, 508 S.W.2d 592, 597 (Tex.1974), regarding a fireman who was dismissed for failure to submit to a polygraph examination after he had been charged with a criminal offense, Justice Reavley in a five-four dissent said,

> "The Fire Chief had a responsibility to Fireman Talent: to respect the rules of job tenure and to treat Talent fairly. He also had a responsibility to the other 127 people in his department when discipline and mutual trust are necessary. He had the people of Abilene to serve. Abilene's ordinances provide that its firemen and policemen must be persons of good moral character ...
>
> [I] would say that the Legislature and City of Abilene recognized that policemen and firemen should be credible and trustworthy." [12]

Policemen are just simply a special category. Integrity and trust are pre-requisites. The law clothes an officer with authority to handle many critical situations, including those that occur in a lightning moment and which never can be re-enacted or reversed. There are so many far-reaching implications that the Legislature, in order to exclude a majority of undesirable applicants, while acknowledging it might deny a minority of acceptable ones, simply had to draw a line. That line prevents ex-felons from being certified as police officers. It does not prevent them from other work; in fact in other areas, society encourages their rehabilitation. Under the facts of this case, it is especially apparent as Plaintiff's felony conviction (robbery) would directly reflect on his qualifications for the job (investigating robberies, etc.). *Butts v. Nichols*, 381 F.Supp. 573, 580 (S.D. Iowa C.D.1974). A state's legitimate concern for maintaining high standards of professional conduct extends far beyond the initial licensing. *Barsky v. Board of Regents of N.Y., supra*, 347 U.S. at 451, 74 S.Ct. at 655.

The Court cites two examples of cases which are consistent with its reasoning, *Upshaw v. McNamara*, 435 F.2d 1188 (1st Cir. 1970) (action by a rejected ex-felon, who was later pardoned, for a police appointment); *Foley v. Connelie*, 419 F.Supp. 889 (S.D.N.Y.1976) (Irish alien brought a class action for declaration that New York statute was unconstitutional, insofar as it excluded aliens from employment as New York State Troopers); and four which are distinguishable, *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (applicant was excluded from the practice of law; in fact, applicant's past criminal record included only arrests, and he was never tried or convicted for any single offense); *Andrews v. Drew*

---

**10.** Or, as Judge (later Justice) Holmes once said, "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *McAuliffe v. Mayor of City of New Bedford*, 155 Mass. 216, 29 N.E. 517 (1892).

**11.** *Compare: Beller v. Middendorf*, 632 F.2d 788, 812 (9th Cir. 1978); and *Hankamer v.*

*Templin, supra*, 143 Tex. 572, 187 S.W.2d at 551 (1945).

**12.** *See also: Richardson v. City of Pasadena*, 500 S.W.2d 175, 177 (Tex.Civ.App.—Houston [14th Dist.] 1973), rev'd on other grounds, 513 S.W.2d 1 (Tex.1974), aff'd with orders, 523 S.W.2d 506 (Tex.Civ.App.—Houston [14th Dist.] 1975).

*Municipal Separate School District*, 507 F.2d 611 (5th Cir. 1975), *cert. dismissed*, 425 U.S. 559, 96 S.Ct. 1752, 48 L.Ed.2d 169 (1976) (unwed mothers brought suit seeking to declare unconstitutional a rule determining them ineligible as teacher's aides; the rules involved left no consideration for the multitudinous circumstances under which illegitimate childbirth may occur and which may have no bearing on a parent's present moral worth); *Thompson v. Gallagher*, 489 F.2d 443 (5th Cir. 1974) (discharged custodian alleged city ordinance barring *any* municipal employment of *any* veteran not having an honorable discharge unconstitutional; general category of "persons with other than honorable discharge" unquestionably too broad where automatic dismissal the result and opportunity for any employment foreclosed); *Butts v. Nichols*, 381 F.Supp. 573 (S.D.Iowa C.D.1974) (class action relief seeking to ban state statute prohibiting employment of convicted felons in civil service positions; Iowa statutory scheme had across-the-board prohibition against the employment of *all* felons in *all* civil service positions).

Finally, this Court relies on the holding in *United States v. Giles*, 640 F.2d 621 (5th Cir. 1981) regarding Plaintiff's overbreadth-underbreadth argument. In *Giles*, Defendant challenged the constitutionality of a federal statute which made unlawful the receipt of a firearm by a convicted felon. The amended statute had substituted a broader, more precise quantitative standard (conviction of a crime, violent or otherwise, that is punishable by imprisonment for more than one year) for a narrower, somewhat imprecise qualitative standard (conviction of a "crime of violence"). Deciding the issue under the equal protection banner, the panel unanimously concluded the statute bore a rational relationship to the goal Congress sought to promote, i.e. persons who have been convicted of serious crimes in the past have demonstrated a greater *potential* for abuse of their right to possess firearms.

■ The general principles enunciated in *Giles* under its facts bear a significant similarity to the facts and theories of this case. The Court, therefore, concludes there was no equal protection violation.[13]

### VIII. Procedural Due Process

Plaintiff contends his due process rights were violated because there was no opportunity for any hearing to allow the Commission to evaluate his individual record. On a more theoretical level, Plaintiff would assert he is now unable to demonstrate to the Commission he can satisfy the underlying purposes of the statute.

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law." After closely studying the issue, the following general principles seem applicable.

■ The Fourteenth Amendment provides an independent right to demand that the government act in a nonarbitrary manner at all times. *Thompson v. Gallagher, supra,* 489 F.2d at 446–47; *Kindem v. City of Alameda, supra,* 502 F.Supp. at 1113. A state cannot exclude a person from an occupation in a manner or for reasons which contravene the due process clause. *Schware v. Board of Bar Examiners, supra,* 353 U.S. at 238–39, 77 S.Ct. at 755–56. Further, due process requires that action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice. *Buchalter v. New York*, 319 U.S. 427, 429, 63 S.Ct. 1129, 1130, 87 L.Ed. 1492 (1942). Even though the

---

**13.** In *Miller v. Carter, supra,* 547 F.2d at 1314 (7th Cir. 1977), an ex-offender brought suit challenging a city ordinance permanently barring persons convicted of certain offenses from obtaining a public chauffeur's license. The Court of Appeals held that, because of the irrational distinctions resulting from the statute (including one convicted of a prohibited offense but concealing the fact and obtaining a license, and still remaining eligible to keep the license), the ordinance violated equal protection. However, those kinds of potential discrepancies are not possible under the Texas Statute as Article 4413(29aa)(8A)(b) states a final conviction of a felony disqualifies any person previously certified.

government purpose be legitimate and substantial, that purpose cannot be pursued by means which broadly stifle fundamental personal liberties when the end can be more narrowly achieved. *Police Department v. Mosley*, 408 U.S. 92, 101 n.8, 92 S.Ct. 2286, 2293 n.8, 33 L.Ed.2d 212 (1972).

Due Process, unlike some legal rules, is not a technical concept with a fixed content, unrelated to time or circumstances. Its very nature negates any notion of inflexible procedures universally applicable to every imaginable situation. *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961); *McDowell v. State of Texas*, 465 F.2d 1342, 1348 (5th Cir. 1972) (en banc), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1371, 35 L.Ed.2d 610 (1973). It does not require a hearing in every conceivable case of governmental impairment of private interests. *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *McDowell v. State of Texas, supra*, 465 F.2d at 1348. For example, generally, there is no violation of due process if a statute gives a person of ordinary intelligence fair notice that his contemplated conduct is prohibited, *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60 L.Ed.2d 755 (1979); *United States v. Giles, supra*, 640 F.2d at 628–29.

A state can require high standards of qualification for a profession such as good moral character, as long as it has a rational connection to the applicant's fitness or capacity (especially when discussing a "true" profession, like law, medicine or law enforcement, where ethics should be the most minimal of qualifications). *Schware v. Board of Bar Examiners, supra*, 353 U.S. at 239, 77 S.Ct. at 756. When a state exercises such a right, the question often arises: does due process require any kind of a hearing?[14] In answering that, Courts no longer can rely on a privilege-right distinction, *Board of Regents v. Roth, supra*, 408

U.S. at 571, 92 S.Ct. at 2705; *Thompson v. Gallagher, supra*, 489 F.2d at 446, but rather fall on a "life, liberty, or property" analysis. *Board of Regents v. Roth, supra*, 408 U.S. at 569, 92 S.Ct. at 2705.

In an action alleging a deprivation of an interest without proper due process of law, it is first necessary to consider the nature of that interest. *Lindsey v. Normet*, 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972). Delineating those boundaries, it is standard for a Court to ascertain whether the interest invaded, if at all, is a "liberty," or "property" interest? While there is no constitutionally protected right to government employment, *Orr v. Trinter*, 444 F.2d 128, 133 (6th Cir. 1971), *cert. denied*, 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1973); *Roseboro v. Fayetteville City Bd. of Ed.*, 491 F.Supp. 113, 117 (E.D.Tenn.1978), there is a liberty interest in the right "to engage in any of common occupations of life . . . ." *Board of Regents v. Roth, supra*, 408 U.S. at 572, 92 S.Ct. at 2706; *Giordano v. Roudebush*, 448 F.Supp. 899, 904 (S.D.Iowa 1977), *affirmed*, 617 F.2d 511 (8th Cir. 1980). In Roth, the court distinguished between a "general" right to engage in a chosen occupation, and a specific right to a particular position, and determined due process protection only attaches to the former interest. *See also: Orr v. Trinter, supra*, 444 F.2d at 133. Therefore, it would seem that where state action denies a person a license or opportunity[15] to practice his chosen profession, due process may require that he be given a hearing and a chance to respond to the charges against him. *See, e.g., Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1957); *Schware v. Board of Bar Examiners, supra*, 353 U.S. at 232, 77 S.Ct. at 752, 1 L.Ed.2d 796. This may be especially relevant when the applicant "has no procedural due process rights apart from those which the agency has chosen to create by its own regulations." *Schwartz v. Fed. Energy Reg. Com'n.*, 578 F.2d 417, 420 (D.C.Cir.1978).

14. *Compare Occupations, Professions and Licenses—Persons with Criminal Backgrounds*, Vernon's Texas Session Law Service: 1981 Tex.Sess.Law Serv., ch. 267, § 13(c), at 694.

15. See *Gosney v. Sonora Independent School District*, 603 F.2d 522, 525 (5th Cir. 1979); *Thomas v. Bd. of Trustees, Etc.*, 515 F.Supp. 280, 287 (S.D.Tex.1981).

■ Under the facts of this case, however, Plaintiff has never requested a hearing, has never alleged that the lost opportunity caused him humiliation or embarrassment, or has never complained of any stigma attached to his reputation.[16] Before Plaintiff can raise the question of being denied procedural due process, he must request a hearing and have such request denied by the Commission.[17]

*IX. Conclusion*

■ It is this Court's holding that (1) the pardon granted to the Plaintiff by the Governor removes some, but not all, legal disabilities and, (2) the statute automatically excluding ex-felons from certification as police officers is constitutional.

In conclusion the following citation succinctly states this Court's position in regard to cases such as this being filed in federal court.

"... we note that the issues involved in this case might have best been raised in another forum. The rights with which [Plaintiff] is primarily concerned are the rights of pardoned felons under [Texas] law. Federal issues are at best secondary and hinge upon our interpretation of state law. Since there is only one Massachusetts case, [as was the number of Texas cases] which treats this issue and then only briefly, we are handicapped in our interpretation; in future cases [Texas] might expand the rights of pardoned felons. Moreover, [Texas] might seek to afford [Plaintiff] more procedural protection than we think the federal Constitution requires. In the future we would be tempted to abstain from deciding similar cases in which the federal rights were secondary and based on rights granted by the state, particularly if an alternative state forum were available to the plaintiff."

*Upshaw v. McNamara, supra,* 435 F.2d at 1192.

IT IS SO ORDERED.

---

**16.** The Supreme Court has stated that a liberty interest would not be infringed where the only loss suffered is a "stigma" or damage to reputation. *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *see also: Graves v. Duganne,* 581 F.2d 222, 224 (9th Cir. 1978).

**17.** Police work is a highly commendable and highly important position. The same may be said for the legal profession. Both are matters of great public concern. This Court notes that the statute which once automatically barred a convicted felon from continuing to practice as an attorney has been abolished, Tex.Rev.Civ. Stat.Ann. art. 311 (repealed 1979). Thus, it seems any convicted felon who may be an applicant for the bar or an attorney who has been disbarred because of a felony conviction and seeks reinstatement after serving his sentence and being pardoned will probably be given a hearing.