

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0283-16

### ROGER DALE VANDYKE, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### MONTGOMERY COUNTY

**YEARY, J., filed a dissenting opinion in which KEASLER, J., joined.**

### <u>DISSENTING OPINION</u>

In every previous constitution of the State of Texas since the first in 1845, the

clemency power has resided in the Executive Department. It resides there still.[1] *See* TEX.

CONST. art. IV, § 11(b). Among those powers is the power to "pardon" ordinary criminals.

*See id*. ("In all criminal cases . . . the Governor shall have the power, after conviction, . . . to

---

[1] Indeed, until 1935, the clemency power resided *exclusively* in the Executive Department. By constitutional amendment, the Judicial Department was granted limited clemency "power, after conviction," to place criminal defendants on probation. TEX. CONST. art. IV, § 11A, enacted by Acts 1935, 44th Leg., H.J.R. No. 46, § 1, p. 1226, adopted Aug. 24, 1935.

grant . . . pardons[.]"). Today, the Court holds that a legislative act nullifying an existing criminal conviction nevertheless does not impinge upon our state constitutional mandate of separation of powers among the three discrete departments of government. *See* TEX. CONST. art. II, § 1 (dividing the powers of state government among "three distinct departments" and providing that their respective powers are mutually exclusive). The Court's holding is contingent upon its understanding of what constitutes a "pardon" in contemplation of the clemency power. Although I admit that the Court's understanding derives from relatively long-standing case law, I believe there is an older, broader definition of "pardon" that has greater constitutional provenance and is far more likely to correspond to the Framers' original conception of what a pardon—or at least a full pardon—does. By my understanding of "pardon," the Legislative Department in this case encroached upon an Executive Department prerogative. I would therefore hold that the legislative enactment violated Article II, Section 1, of the Texas Constitution, and affirm the court of appeals' judgment.

## SEPARATION OF POWERS

After setting out the three "distinct departments" of state government, Article II, Section 1, goes on to provide, as it has since its first incarnation in 1845, that "no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in instances herein expressly permitted." *Id*. Article IV, Section 11(b), in turn, assigns the general clemency power to the Executive Department.

In keeping with these constitutional provisions, we have long held that "the power . . . to pardon . . . is one confided by our Constitution to the Governor of this state, over whose discretion in such matters this court has no control or right of review." *Ex parte Gore*, 4 S.W.2d 38, 39 (Tex. Crim. App. 1928). And it is not just the judiciary that is so constrained: "[W]hen the Constitution defines the duties of an agency of the government, the Legislature is without authority to add or take away from those powers or duties or substantially alter them." *Ferguson v. Wilcox*, 28 S.W.2d 526, 533 (Tex. 1930). Moreover, when the Constitution confers a particular power to one department, it is presumed to be an exclusive delegation, unless it is otherwise made express in the Constitution itself. *Id*. at 532.[2] Any attempt by one of the departments to exercise, or to unduly interfere with, a power assigned to another department is "null and void." *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex. Crim. App. 1974); *State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 101 (Tex. Crim. App. 1973). And when one department actually exercises a power of another (as opposed to merely interfering), it violates separation of powers to do so "*to whatever degree*." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990).

What this means is that, outside of the context of probation, neither the Judiciary nor the Legislature may presume to exercise, or substantially interfere with, the Executive

---

[2] For example, as already noted, since 1935 the Texas Constitution has expressly conferred a limited power of clemency upon the courts of original criminal jurisdiction, subject to the express prescriptions of the Legislature. TEX. CONST. art. IV, § 11A.

Department's exclusive prerogative to confer (or not) clemency "after conviction." We have consistently construed "after conviction," for purposes of Article IV, Section 11(b), to mean not after a formal judgment of conviction is entered in the trial court (much less what we would now call a "final" judgment for other purposes), but at an earlier junction: after a verdict of guilt or the acceptance of a guilty plea. *See Snodgrass v. State*, 150 S.W. 162, 172-74 (Tex. Crim. App. 1912) (op. on reh'g) ("Thus it is seen that the terms 'after conviction' in our Constitution do not embrace the sentence, but simply mean the determination of guilt by the tribunal authorized to try the issue of guilt or innocence of a defendant and a person becomes subject to pardon whenever that issue is finally determined."); *Giles*, 502 S.W.2d at 784 (relying on *Snodgrass* to reject the argument that "until there is . . . a final conviction there can be no infringement upon the Governor's constitutional powers to grant pardons, commutations, etc.", and citing other cases "in accord with the *Snodgrass* interpretation of the term 'after conviction'"). "And the *Snodgrass* court forcefully pointed out that the meaning of the words of a Constitution at the time they were placed therein cannot be altered or amended by legislation at a subsequent time." *Giles*, 502 S.W.2d at 784. *See also Snodgrass*, 150 S.W. at 172.[3] Thus, we are constrained to hold that neither the Legislative

---

[3] At the time *Snodgrass* was decided, the law in Texas was that "in all felony cases, sentence must follow the judgment." 150 S.W. 162, 172 (Tex. Crim. App. 1902) (op. on reh'g). Under the current Code of Criminal Procedure, of course, this is no longer the case. *See* TEX. CODE CRIM. PROC. art. 42.01, § 1 (9)-(10), (15)-(19) (requiring that the written judgment reflect the fact that sentence was imposed and the particulars thereof). That our statutory procedure has evolved, however, cannot serve to change the meaning of the term "after conviction" for constitutional purposes.

nor the Judicial Department may encroach upon the Executive Department's exclusive prerogative to confer a "pardon" at any time "after conviction"—that is to say, at any time after a finding of guilt as reflected by a jury verdict or acceptance of a guilty plea.

Here, the Legislature has enacted a savings clause that would require a trial court to nullify an already existing guilty verdict on the basis that, after the conduct upon which the verdict was based was committed, the penal law that criminalized that conduct was repealed. The issue in this case devolves into a question whether this has the necessary effect of "pardoning" the defendant whose conduct is thus retroactively rendered innocent. The answer depends upon what a "pardon" is in contemplation of Article IV, Section 11(b).

## WHAT IS A "PARDON"?

Boiled down, the Court today derives its narrow definition of "pardon" from a pair of cases. First, in the text, the Court quotes a definition taken from the opinion on original submission in *Snodgrass*: "[A]n act of grace . . . which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed." Majority Opinion at 21 (citing *Snodgrass*, 150 S.W. at 165 (op. on orig. subm.)). In a footnote shortly thereafter, the Court cites a second, more recent opinion that similarly limits the effect of a "pardon" to removing the penalty for an offense, but not the offense or the conviction therefor. Majority Opinion at 22 n.56 (citing *Watkins v. State*, 572 S.W.2d 339, 341 (Tex. Crim. App. 1978), which in turn quotes *Jones v. State*, 147 S.W.2d 508, 511 (Tex. Crim.

App. 1941), for the proposition that "the Governor's pardon forgives only the penalty, 'but he has no power to direct that the courts shall forget either the crime or the conviction.'").[4]

Thus, as I understand it, the Court today holds that the Legislature's action in retroactively rendering Appellant innocent in this case did not constitute a "pardon," in derogation of the Governor's authority, because it did not remit the penalty alone, but instead obviated the possibility of penalty by removing the criminality of his conduct altogether. But that is what a "pardon" does in my book.

Older case law bears me out in this. In *Snodgrass* itself, in our opinion on rehearing, we revisited the question of what a "pardon" constitutes for purposes of separation of powers analysis and provided a much more expansive answer. We asked ourselves: "What is a 'pardon'?" We replied:

> That term has been defined and has a well-understood meaning. In *Carr v. State*, [19 Tex. Ct. App. 635, 660 (1885)], this court held: "A pardon is a

[4] The Court also nakedly asserts that "[t]he clemency power does not allow the governor to affect the underlying conviction." Majority Opinion at 21. The Court cites no case authority at this juncture, but simply observes in the margin that "[t]his would seem to be self-evident from the text of the Constitution which limits the governor's exercise of his clemency power to 'after conviction or successful completion of a term of deferred adjudication community supervision[.]' TEX. CONST. art. IV, § 11." *Id.* n.55. It is unclear to me in what way the fact that the Executive Department may not invoke its clemency power until "after conviction" serves self-evidently to establish that such power "does not allow the governor to affect the underlying conviction." The quoted part of the constitutional provision seems to speak to *when* the clemency power may be exercised (namely, after conviction, or in the absence of a conviction, after the successful completion of deferred adjudication community supervision), not *how* it may be exercised. *How* the clemency power may be exercised seems to me to be more a function of what we construe "reprieves," "commutations of punishment," and (most importantly) "pardons" (and, particularly, *full* pardons) to mean. Whether the clemency authority can "affect" a conviction depends upon what a pardon *is*.

remission of guilt."

*Snodgrass*, 150 S.W. at 176 (op. on reh'g).[5] We also observed that "[t]his definition is in accordance with the decisions of all the courts of last resort not only in this country, but of England as well." *Id*. A canvass of our own earlier cases confirms this assertion.

*Carr* involved an issue of whether a gubernatorial pardon served to restore the competency of a witness to testify at the appellant's criminal trial. Though all three judges on the then-Texas Court of Appeals weighed in with opinions in the case, they all agreed that, *e.g.*, "[a] full pardon blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense." 19 Tex. Ct. App. at 661 (opinion of Presiding Judge White) (taking verbatim language from the opinion of the United

---

[5] Consistent with this understanding, even on original submission in *Snodgrass*, we had observed while discussing the statute there at issue:

> This act by its provisions provides that after a person has been legally convicted of a crime, and his sentence suspended under the provisions thereof, upon the expiration of double the time assessed as punishment by the jury, the defendant may apply to the court to have the judgment of conviction set aside, and, if it appears that he has not been convicted of any other offense, the judgment of conviction shall be set aside and annulled, thus giving the district courts the power and authority to exempt from punishment a person legally convicted of crime, and of which he has been adjudged guilty, and to which our laws affix a penalty. By the act of setting the judgment aside such person would also be restored to all the rights and privileges to which one is entitled who has never been convicted of an offense. In other words, this act of the Legislature grants to such a person an unconditional pardon, although the word "pardon" is not used therein[.]

150 S.W. at 165 (op. on orig. subm.). Thus, even on original submission, we understood "pardon" to include setting aside and nullifying the conviction.

States Supreme Court in *Ex parte Garland*, 71 U.S. 333, 380 (1866)).[6] In *Ex parte Garland*, the United States Supreme Court had declared that "all the authorities concur[:] A pardon reaches both the punishment prescribed for the offence and the guilt of the offender[.]" 71 U.S. at 380. Similarly, all the members of the Supreme Court agreed in 1872 "that the pardon [power of the President] not merely releases the offender from the punishment prescribed for the offense, but . . . it obliterates in legal contemplation the offence itself." *Carlisle v. United States*, 83 U.S. 147, 151 (1872). *See also Osborn v. United States*, 91 U.S. 474, 478 (1875) ("[T]he pardon, *in releasing the offence*, obliterat[es] it in legal contemplation[.]"); *United States v. Klein*, 80 U.S. 128, 147 (1871) (a pardon "blots out the offence pardoned *and* removes all its penal consequences") (all emphasis added).

Six months before the Texas Court of Appeals' decision in *Carr*, it had spoken on the same question, but with a unified voice. *Hunnicutt v. State*, 18 Tex. Ct. App. 498 (1885). In

---

[6] As the Court in *Carr* explained, there are different types of pardon. A full or absolute pardon is

> one which frees the prisoner without any condition whatever. A conditional pardon is one to which a condition is annexed, performance of which is necessary to the validity of the pardon. If the pardon be conditional, the condition may be either precedent or subsequent; if precedent,--that is, if by its terms some event is to transpire before it takes effect,--its operation is deferred until the event occurs. But if the condition is subsequent, the pardon goes into operation immediately, yet becomes void whenever the condition is broken.

19 Tex. Ct. App. at 657 (quoting 1 Bish. Crim. Law, 914). Because the Court holds today that the Legislature has absolved Appellant of the full consequences of his offense, I will address the question whether that constitutes a derogation of the Executive Department's power to grant an absolute or full pardon. Whenever I refer to a pardon in the balance of this opinion, that is what I mean.

holding that a pardoned convict should have been permitted to testify at trial (even though he had not been pardoned until after completing his prison sentence),[7] the Court observed that:

> [t]he power of the executive of the State, under the State Constitution, to pardon offenses, is of the same general nature as that conferred upon the President of the United States by the Federal Constitution, except that the pardoning power of the president extends to the pardon of offense before conviction, while the Governor can only pardon after conviction.

*Id*. at 517. We quoted Mr. Bishop's learned treatise to the effect that "[a] full pardon absolves the party from all the legal consequences of his crime and of his conviction, direct and collateral, *including* the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided." *Id*. at 519 (quoting 1 Bish. Crim. Law § 916 (7th ed.) (emphasis added)). *See also Locklin v. State*, 75 S.W. 305, 307 (Tex. Crim. App. 1903) (Governor's pardon served to restore witness's competency to testify in murder prosecution).[8]

Ten years later, this Court addressed the question of whether a convicted felon can serve on a jury after he has been pardoned by the Governor.[9] *Easterwood v. State*, 31 S.W.

---

[7] The 1879 Code of Criminal Procedure regarded a convicted felon as "incompetent" to testify in a criminal prosecution unless his conviction had been "legally set aside" or he had been pardoned. *Hunnicutt v. State*, 18 Tex. Ct. App. 498, 517 (1885) (quoting Article 730 of the 1879 Texas Code of Criminal Procedure).

[8] *See also Bennett v. State*, 24 Tex. Ct. App. 73, 79, 5 S.W. 527, 529 (1887) (reiterating that a pardon "blots out" the offender's "offense," but holding that, though he was not, for that reason, wholly incompetent to testify, he could still be impeached with the fact of his pardoned conviction); *Sipanek v. State*, 272 S.W. 141, 142 (Tex. Crim. App. 1925) (same).

[9] To this day, no veniremember may serve on a jury in a criminal case in Texas if he has been convicted of a felony. TEX. CODE CRIM. PROC. arts. 35.16(a)(2) & 35.19.

294 (Tex. Crim. App. 1895). Holding that he may, we cited the same Supreme Court authorities (and others) to the effect that a pardon constitutes "a purging of the offense[.]" *Id*. at 296. So secure was the Court in its perception that a pardon erased, not just the penalty, but the offense itself, that we observed:

> It would seem almost a work of supererogation now to discuss the effects of an absolute pardon, and it would appear almost strange at this late day that its effect could be thought to be otherwise than that of complete remission of all guilt that might attach to the conviction.

*Id*. We concluded, accordingly, that "[w]hen a full pardon takes effect, all disabilities disappear, and the grantee stands as if he had never been convicted." *Id*. at 297.

The question in *Sanders v. State*, 1 S.W.2d 901 (Tex. Crim. App. 1928), was whether a felony conviction for which the appellant had received a pardon could be used as the basis to revoke his suspended sentence in an earlier felony conviction. Relying upon language from many of the cases I have already discussed, the Court held that the pardon "wiped out" the latter conviction, and the trial court erred to rely upon it to revoke the appellant's suspended sentence in the earlier conviction. *Id*. at 902-03. *See also Warren v. State*, 74 S.W.2d 1006, 1008 (Tex. Crim. App. 1934) (observing in dicta that a defendant who has been granted a full pardon for an earlier felony conviction would not be prevented from obtaining a suspended sentence in a subsequent felony prosecution, since the pardon would "wipe out the stain of guilt" for the earlier felony conviction).

Yet another variation on the question of the effect of a full pardon was presented in

*Scrivnor v. State*, 20 S.W.2d 416 (Tex. Crim. App. 1928). The prosecution there attempted to use a prior felony conviction to enhance the appellant's punishment for a subsequent felony offense, but the appellant had been pardoned for the prior offense. Citing a host of authorities (including many I have mentioned above), the Court held that the pardon rendered the enhancement unavailable, explaining that, "as the first offense was in legal contemplation blotted out, and its consequences removed, by the pardon of the governor, it must be regarded, for the purposes of this case, as though it had never been committed." *Id*. at 421 (op. on reh'g) (quoting *Edwards v. Commonwealth*, 78 Va. 39, 44 (1883)). This was unequivocally the state of the law up until the *Jones* case was decided in 1941.[10] *Jones v. State*, 147 S.W.2d 508 (Tex. Crim. App. 1941).

The issue in *Jones* was exactly the same as in *Scrivnor*: may the prosecutor use a prior felony conviction to enhance the defendant's present offense if the defendant has been pardoned for the prior felony? The Court acknowledged that "[t]he very question was definitely decided in favor of [Jones's] contention in" *Scrivnor*, but it declared itself nonetheless "at liberty to follow the *Scrivnor* case or refuse to do so." *Jones*, 147 S.W.2d at 509. Nothing had changed in the thirteen years separating *Scrivnor* and *Jones*—except for the personnel on the Court itself. Judge Hawkins, who was the lone dissenter in *Scrivnor* in 1928, had become the Presiding Judge by 1941, and he was joined by three new judges, one

---

[10] Article IV, Section 11, was amended in 1936 to constrain the Governor to grant pardons only upon the recommendation of the Board of Pardons and Paroles. Acts 1935, 44th Leg., S.J.R. No. 26, § 1, p. 1237, adopted Nov. 3, 1936. This limitation has no affect on the meaning of "pardon."

of whom, Judge Beauchamp, authored the *Jones* opinion. After discussing the same authorities the Court had cited in *Scrivnor*, the Court in *Jones* simply announced a new result, overruling "[a]ll former decisions" to the contrary. *Id*. at 510-11. "We find no condition[,]" Judge Beauchamp declared, "under which our courts have ever held the Governor's pardon to effectively wipe out the existence of a fact, save and except in the application of the enhancement statute." *Id*. at 511. This assertion is demonstrably false, as evidenced by the holdings in *Carr*, *Hunnicutt*, *Easterwood*, and *Sanders*. Notwithstanding this well-established and uncontradicted line of cases, the Court announced that, under the pardon power, "[t]he Governor can forgive the penalty, but he has no power to direct that the courts shall forget either the crime or the conviction." *Id*.

Exactly why, given the same precedents, did the Court come to opposite conclusions in *Scrivnor* and *Jones*? In *Scrivnor*, the Court had observed that, in the 1892 seventh edition of his oft-cited treatise, Mr. Bishop had endorsed the view that a pardoned conviction could not be used to enhance the penalty for a subsequent conviction; the pardon rendered the first offense a nullity so that there was no earlier felony conviction to enhance the subsequent one. *Scrivnor*, 20 S.W.2d at 418. Later, however, in 1923, editors of the ninth edition had added a new section to the treatise that expressed a contrary view, fueled by some later cases around the country that had taken the position that a pardon should not have the effect of "wiping out" a conviction when, by committing a subsequent offense, the defendant proved himself unworthy of the Governor's grace.

Noting this contradiction within the later edition, the Court in *Scrivnor* had opted for Bishop's original view over that of his later editors:

> Mr. Bishop says . . . that the mistake lies in considering the latter offense, the *second one*, because the first one having been pardoned, the latter is not the second one. If it be said that the later burglary by A makes him an habitual criminal, it might well be asked what makes him such in terms of the law? There could be but one answer, which is that the plea and proof of his former conviction makes him such. To us it seems idle to say that such conviction may not be invoked when the question is A's subsequent right to testify, his electoral right, his other rights as a citizen, to sit on a jury, to practice his profession, his right in all of said instances arising because all legal consequences of his conviction have been forever canceled, annulled, and made void, and because he has new standing and credit in all these instances; and yet, somehow, these authorities proceed to say that such conviction can be looked to and invoked and all its hurtful legal consequences be used against the accused if he thereafter is brought before the bar of justice charged with a similar offense. To merely say in words that his punishment is only affected by the commission of the new crime does not make it so and cannot.

*Id*.

In overruling *Scrivnor*, however, Judge Beauchamp aligned himself with the later editors, rejecting the view of Bishop himself. *Jones*, 147 S.W.2d at 510. "Whatever might have been the force and effect of the pardon as it originated in an early date[,]" he remarked in *Jones*, "appears to the writer to be immaterial." *Id*. at 511. But, as the earlier line of cases that *Jones* simply ignored undoubtedly demonstrates, the *Scrivnor* conception of the pardon power, mirrored in Bishop's own view rather than that of his later editors, was the established common-law view. This was the concept that the Framers would have had in mind when they fashioned Article IV, Section 11, of the Constitution of Texas in 1845, as

well as our current Constitution of 1876. That early conception is anything but "immaterial." It was beyond the judicial prerogative of the *Jones* Court to alter the accepted meaning of this constitutional term simply in order to construe a legislative enactment to reach a desired result. *See Giles*, 502 S.W.2d at 784 (the original meaning of constitutional words cannot be altered by subsequent legislation); *Snodgrass*, 150 S.W. at 172 (same). For the Court thus to restrict the scope of "pardon" to less than its common law meaning constituted a non-executive incursion upon what had, up to that point, justifiably been regarded as a power belonging exclusively to the Executive Department. Yet that is what the Court accepts today when it resorts to the expurgated definition of the pardon power reiterated in *Watkins*. Majority Opinion at 22 n.56 (citing *Watkins*, 572 S.W.2d at 341, which in turn quotes *Jones*, 147 S.W.2d at 511). We should not blithely follow *Jones*, as *Watkins* did. We ought to overrule it.

## WHAT ABOUT A PARDON FOR INNOCENCE?

Even after *Jones* was decided in 1941, this Court seems to have recognized and distinguished a so-called "pardon for innocence" as an act of the Governor that would essentially undo a conviction in its entirety, not simply make the punishment go away.[11] For

---

[11] "History shows that the traditional remedy for claims of innocence based on new evidence, discovered too late in the day to file a new trial motion, has been executive clemency." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Moreover, "history is replete with examples of wrongfully convicted persons who have been pardoned in the wake of after-discovered evidence establishing their innocence." *Id*. at 415. When it comes to innocence, executive clemency is the "fail-safe," meant to compensate for the "unalterable fact that our judicial system, like the human beings who administer it, is fallible." *Id*. In this context, it makes little sense to regard the Governor's authority to grant a full

example, in *Logan v. State*, 448 S.W.2d 462 (Tex. Crim. App. 1969), the appellant had been convicted of the offense of possession of burglary tools under Article 1402b of the 1925 Penal Code. Under that provision, it was an offense for a person who had been convicted of a felony to possess certain implements commonly used to commit burglaries. *See* Acts 1963, 58th Leg., ch. 254, § 1, p. 691, eff. Aug. 11, 1963. Logan argued that he could not be convicted of this offense because he had been pardoned for his prior felony offenses. We observed that the issue was "jurisdictional in that if the pardon was predicated upon a finding by the [E]xecutive [D]epartment of this State that appellant was not guilty of the offense for which he was convicted then there would be no offense." *Logan*, 448 S.W.2d at 464.

This observation proved to be *obiter dictum* in *Logan* because the Court found that Logan's pardon was *not*, in any event, "for innocence," and we therefore relied upon *Jones* to reject his argument on appeal. *Id*. But it strongly suggests an understanding that the Executive Department's power to pardon will at least *sometimes* embrace the authority to make the conviction and offense go away, even if not *every* pardon that the Governor grants will have that effect. *See also Ex parte Smith*, 548 S.W.2d 410, 414 (Tex. Crim. App. 1977) (observing that the combined holdings of *Jones* and *Logan* means that "a pardon for any reason other than subsequent proof of innocence does not obliterate the defendant's conviction"); *Runo v. State*, 556 S.W.2d 808, 809-10 (Tex. Crim. App. 1977) (in a

---

pardon as ineffectual to negate the crime. Are we content to construe the pardon power simply to retract the punishment and other adverse consequences attending to the innocent convict, or should we not also construe it to remove the stigma of conviction itself?

prosecution for possession of a firearm by a felon, proof of a pardon did not make the prior conviction unavailable absent proof "that appellant's pardon was based upon the Governor's finding that appellant was innocent").[12] We have even intimated that a so-called "pardon for innocence" might render a prior felony conviction unavailable for enhancement-of-punishment purposes, *Jones* notwithstanding. *See Gaffney v. State*, 575 S.W.2d 537, 541 (Tex. Crim. App. 1978) (the appellant's claim that "a pardon by the Governor should prevent the use of the pardoned conviction under V.T.C.A., Penal Code, Section 12.42" was "without merit without more").[13]

---

[12] In 2011, the Legislature amended the expunction statutes to allude for the first time to an expunction of arrest records on the basis of a pardon that is granted "on the basis of actual innocence," and to provide that a district court should grant such an expunction order expeditiously. *See* Acts 2011, 82nd Leg., ch. 690, §§ 1 & 2, pp. 1653 & 1655, eff. Sept. 1, 2011 (amending Articles 55.01 and 55.02 of the Code of Criminal Procedure). This suggests that the Legislature shares my view that the Governor's pardoning power may at least sometimes extend to "blotting out" the conviction and offense, justifying a concomitant "blotting out" of any underlying arrest records.

[13] Also in 2011, Article IV, Section 11(b), of the Texas Constitution was amended to expressly authorize the Governor to grant clemency to an offender "after . . . successful completion of a term of deferred adjudication community supervision[.]" Acts 2011, 82nd Leg., S.J.R. 9, § 1, p. 5080, adopted Nov. 8, 2011, eff. Dec. 5, 2011. The caption that accompanies the Senate Joint Resolution proposing this constitutional amendment indicates that the intent was to authorize the Governor "to grant a pardon" under these circumstances. *Id*. The pardon contemplated by the Senate cannot possibly have been a pardon pertaining to punishment alone, of course, since one who successfully serves out a term of deferred adjudication community supervision will never be convicted of the offense, let alone punished for it. *E.g.*, *Hammack v. State*, 963 S.W.2d 199, 200 (Tex. App.—Austin 1998, no pet.) (observing that there is no judgment in a case of deferred adjudication because there is no conviction, and no punishment is assessed either). Nothing in the 2011 amendment suggests that the circumstances of such a pardon would be limited to "innocence." Yet it is evident that the Governor's power to pardon in these circumstance can only mean the power to make the offense itself disappear in legal contemplation, since there is neither a conviction nor even any punishment to nullify.

## THE COMMON LAW RULE REGARDING REPEALS

The Court today also finds some justification for its holding in the common law principle that, when the Legislature wholly repeals a penal provision, the presumption is that it intends for all convictions for that offense that are still pending finality on appeal to be nullified, absent a saving clause to indicate an express legislative intent that the law in effect at the time of the commission of the offense should continue to apply. *See* Majority Opinion at 31-34 & n.93 (citing *Ex parte Mangrum*, 564 S.W.2d 751, 753-54 (Tex. Crim. App. 1978), for the proposition that "[w]hen a conviction is pending on appeal based on such conduct, the conviction should be reversed because there is no longer a crime to be prosecuted"). *See also United States v. Chambers*, 291 U.S. 217, 223 (1934) ("In case a statute is repealed or rendered inoperative, no further proceedings can be had to enforce it in pending prosecutions unless competent authority has kept the statute alive for that purpose.").

Texas, we said in *Mangrum*, "has followed the common law rule." 564 S.W.2d at 753-54, and cases cited there.[14] In truth, what we did in Texas was to codify the common law rule, as the Texas Supreme Court recognized as far back as 1857. *Wall v. State*, 18 Tex. 682, 696-97 (1857). Until the advent of the 1974 Penal Code, every penal code in Texas between 1857 and 1973 contained a provision to the effect that, *e.g.*, "[t]he repeal of a law where the

---

[14] *See Greer v. State*, 22 Tex. 588, 590 (1858); *Sheppard v. State*, 1 Tex. Ct. App. 522, 523-25 (1877); *Hubbard v. State*, 2 Tex. Ct. App. 506, 507 (1877); *Montgomery v. State*, 2 Tex. Ct. App. 618, 620 (1877); *Tuton v. State*, 4 Tex. Ct. App. 472, 473 (1878); *Kenyon v. State*, 31 Tex. Crim. 13, 13-14 (1892); *Hall v. State*, 106 S.W. 149, 150 (Tex. Crim. App. 1907); *Mendoza v. State*, 460 S.W.2d 145, 146 (Tex. Crim. App. 1970); *Waffer v. State*, 460 S.W.2d 147, 148 (Tex. Crim. App. 1970).

repealing statute substitutes no other penalty will exempt from punishment all persons who may have violated such repealed law, unless it be otherwise declared in the repealing statute." Article 15, V.A.P.C. (Supp. 1973).[15] My research has turned up no case in which we have ever examined whether the common law rule, as so codified in our former penal codes, conflicted with Article II, Section 1—and neither, apparently, has the Court's.[16]

The Court rather confidently proclaims that the "universal common-law rule" adhered

---

[15] No such provision was carried over into the 1973 Penal Code. Instead, the Code Construction Act, which applies to the 1973 Penal Code, seems to have abrogated the common law principle. The general saving provision in the Code Construction Act provides that "repeal of a statute does not affect . . . the prior operation of the statute or any action taken under it . . . [or] any violation of the statute or any penalty . . . or punishment incurred under the statute before its . . . repeal[.]" TEX. GOV'T CODE § 311.031(a)(1) & (3), applicable to the 1973 Penal Code under TEX. GOV'T CODE § 311.002(1). Thus, it is doubtful that Texas still embraced the common law rule by 1978, when *Mangrum* was decided. More to the point in this case, these provisions of the Code Construction Act also apply to Chapter 841 of the Texas Health and Safety Code, added by subsequent amendment to the Health and Safety Code, which was itself enacted in by the 71st Legislature in 1989. Acts 1989, 71st Leg., ch. 678, § 1, p. 2230, eff. Sept. 1, 1989. *See* TEX. GOV'T CODE § 311.002(2) (Code Construction Act applies to "each amendment [or] repeal . . . of a code or code provision by the 60th or a subsequent legislature").

[16] The Court cites *Cox v. State*, 234 S.W. 531 (Tex. Crim. App. 1921), as inferential support for the proposition that, "when amendments to penal provisions invalidate an underlying conviction, the Legislature has validly exercised its power to determine criminal conduct and it has not usurped governor's power to grant clemency." Majority Opinion at 20 & n.50. It is true that *Cox* represents an application of the common law rule, as codified by Article 16 of the 1911 Penal Code. *Id*. But *Cox* did not address whether application of that rule encroaches upon the executive prerogative to grant clemency, and I have found no other case until today that has done so. Whether "the Legislature has validly exercised its power . . . and . . . has not usurped the governor's" has remained an open question. What I *have* found, as described under the next subheading of this opinion, are cases that make clear that the executive clemency power reaches the conviction itself. Indeed, that conclusion was so obvious to the Court in 1895 that it considered it to be "a work of supererogation" even to have to discuss it. *Easterwood v. State*, 31 S.W.294, 296 (Tex. Crim. App. 1895). These cases convince me that, at the time our Constitution was drafted, the Framers understood the pardon power to reach the conviction itself. And it is axiomatic that the Constitution trumps any common law principle that may conflict with it.

to by Maryland in 1964 "was the understanding held by our framers regarding the character and effect of a legislative repeal when our first Texas Constitution was ratified." Majority Opinion at 34. It then doubles down with the claim that, "[h]ad the case before us arisen at the time our framers drafted the Texas Constitution, it is beyond question that Appellant's conviction would have been reversed without any concern regarding the usurpation of the governor's clemency power." *Id*. It cites no authority, however, for these claims. Indeed, the Framers of our Constitution had nothing to say about "legislative repeal" of penal laws and what effect, if any, they might have intended such actions to have on existing criminal convictions. What the Framers were clear about was the proposition that the power of clemency in Texas rests with the Executive Department, exclusively. Whether legislative repeal after a conviction can bring about effects similar if not identical to clemency-based pardons is the question presented here.[17] Based on the language and structure of our unique

---

[17] I do not take issue with the Court's view that a pardon cannot undo a historical fact. *See* Majority Opinion at 26 ("[A] full pardon only removes the legal consequences of the felony conviction, not the conviction itself."). That a defendant has been pardoned does not and cannot change the brute historical fact that he committed an offense and that he was subsequently convicted for its commission. But the Court seems to suggest that the Legislature has the power to do exactly that. *See* Majority Opinion at 38 ("These are not problems in the present case because the Legislature has determined that the underlying conduct is not a crime and therefore the Appellant is not guilty of criminal conduct warranting a conviction."). The subsequent legislative repeal of a penal statute does not alter the fact that, at one point in time, the statute proscribed certain conduct and that the defendant, while that statute was in effect, violated its terms. In fact, the whole point of a retroactive repeal of a penal statute is forgiveness. *See* Majority Opinion at 37 ("[T]he ultimate effect of the amendments removes the consequences of a conviction[.]"). Without the power to revise history, how could it be otherwise? And, understanding that fact, it is therefore indisputable that what the Legislature has done here is to attempt an action that, under our Texas Constitution, only the Executive Department has the power to accomplish. It has, not by virtue of changing brute history, but by exercising the power of the sovereign state, eliminated the effect of a conviction in legal contemplation.

Texas Constitution, I conclude that the Legislature in this case has overstepped. Only the Executive Department can forgive a crime for which a conviction has been obtained.

As an aside, I would observe that the common law rule, as codified in Texas, may well have had no bearing on this case, even if it were still the law today. Only when a penal provision was *wholly* repealed did the rule of retroactive nullification as to pending prosecutions apply. By statute, it has always been the case that any legislative act that merely made some change to the definition of the offense was deemed inapplicable to offenses already committed. Article 16 of the 1925 Penal Code carried forward what, in substance, appeared in all penal codes dating back to 1857:

> If an offense be defined by one law and by a subsequent law the definition of the offense is changed, no such change shall take effect as to the offense already committed; but one accused of violating the first law shall be tried under that law.

Article 16, V.A.P.C. (Supp. 1973). In the instant case, the statute underlying the offense in issue was not wholly repealed; it was only amended to delete a particular manner and means of commission. Such an amendment may not have served to trigger the former codification of the common law rule in Article 15 at all. Under the former statutory scheme, any conviction for an offense as defined under the version of the penal statute at the time it was committed would arguably still stand, by operation of Article 16.

The question is rendered moot, in any event, under the current Code Construction Act, which has replaced the provisions in all prior penal codes governing the effects of a repeal.

Under the Code Construction Act, even the wholesale repeal of—let alone a simple amendment to—a penal provision "does not affect . . . the prior operation of the statute or any prior action taken under it [or] any violation of the statute or penalty . . . or punishment incurred under the statute before its amendment or repeal[.]" TEX. GOV'T CODE § 311.031(a)(1) & (2). The common law presumption has been abrogated.

Notwithstanding the Code Construction Act, may the Legislature nevertheless enact a special saving provision, as it has done in this case, to make the repeal of a penal provision retroactively applicable to nullify convictions for conduct that was criminal at the time it was committed? I do not believe so. In my view, any legislation that would allow such a nullification—at least "after conviction," as that phrase from Article IV, Section 11(b), has been construed—would violate separation of powers under Article II, Section 1.

## USURPATION OF THE PARDON POWER

In *Underwood v. State*, 12 S.W.2d 206 (Tex. Crim. App. 1928) (op. on reh'g), this Court once again confronted a case involving the competency of convicted felons to testify in court in a criminal case. The Legislature had amended the competency statute to provide that convicted felons could testify with respect to offenses they may have witnessed that occurred in the penitentiary. *Id*. at 206; Acts 1926, 39th Leg., 1st C. S., ch. 13, § 1, p. 20, eff. Jan. 12, 1927. The question was whether that provision could apply to restore the competency of felons whose convictions occurred before the passage of the statutory amendment. On original submission, we rejected the appellant's contention that the statute should not apply

retroactively to allow the convict witnesses to testify against him at his murder trial. *Underwood*, 12 S.W.2d at 206. On rehearing, however, we addressed for the first time whether that otherwise-permissible retroactive application of the amendment to the competency statute encroached upon the Governor's exclusive clemency powers. *Id*. at 207. We held that the amendment did in fact violate separation of powers insofar as it applied to any witness whose conviction pre-dated the passage of the amendment. *Id*. at 207-08. We said:

> We have no doubt that the act [amending the witness-competency statute] could be upheld as to all persons offered as witnesses in cases comprehended by the terms of said statute, whose final convictions occurred after the passage of said act, and that in such cases the witnesses would be deemed competent; but being convinced that . . . the Legislature by said act was powerless to remove such disabilities theretofore attached, we now hold that . . . the Legislature exceeded its power in so far as said act . . . related to the witnesses herein and those similarly situated.

*Id*. at 208. *See also Marshall v. State*, 330 S.W.2d 625 (Tex. Crim. App. 1960) (likewise declaring a witness incompetent who was convicted of a felony prior to the 1926 amendment to the witness-competency statute, on authority of *Underwood*).

Of similar import is *Ex parte Miers*, 64 S.W.2d 778 (Tex. Crim. App. 1933). Miers was charged, along with two cohorts, with possession of intoxicating liquor for purposes of sale. He was convicted of the offense, and his appeal was pending when the trial of one of his cohorts began. *Id*. at 779. Miers was called by the State to testify at his cohort's trial, apparently incriminating himself in the process. *Id*. Afterwards, Miers's own conviction was

affirmed on appeal. *Id.* He subsequently filed an application for writ of habeas corpus seeking to have his conviction set aside. *Id.* He relied upon a statute in the intoxicating-liquors chapter of the 1925 Penal Code that compelled witnesses to testify in such cases even though they might incriminate themselves, but that also mandated transactional immunity from prosecution for such witnesses. *Id.*[18] The issue was whether the appellant's own conviction should be retroactively annulled because he had satisfied the terms of the transactional immunity statute. *Id.* at 780. We rejected this argument, holding that to apply the transactional immunity statute to nullify an already existing conviction would usurp the Executive Department's "power to pardon after conviction." *Id.*[19]

Neither *Underwood* nor *Miers* discussed at any length the meaning of Article IV, Section 11(b)'s phrase, "after conviction." But in *Snodgrass*, the Court had already construed this phrase to mean after a guilty verdict. 150 S.W. at 173. The issue in *Snodgrass* was whether the suspended sentence law then in place violated separation of powers. The Court held that, because the statutory scheme authorized the trial court to suspend a sentence that

---

[18] Article 694 of the 1925 Penal Code read:

> No person shall be excused from testifying against persons who have violated any provision of this chapter for the reason that such testimony will tend to incriminate him, but no person required to so testify shall be punishable for acts disclosed by such testimony.

V.A.P.C. art. 694 (1925).

[19] "It is observed that the power to pardon granted to the Governor is to pardon after conviction, and that the Legislature is without authority to give to others the power to pardon after conviction." *Miers v. State*, 64 S.W.2d 788, 780 (Tex. Crim. App. 1933).

had already been imposed and eventually nullify that sentence should the defendant successfully serve out his probationary term, it was essentially a conditional pardon, which improperly invaded the executive pardoning power. *Id*. at 176.[20] A short time later, the Legislature amended the statutory scheme to authorize the jury to decide whether probation was an appropriate punishment "coincident with and as a part of their verdict" assessing guilt in the unitary trial proceeding of that time,[21] instead of authorizing the trial court to suspend an already-imposed sentence, as in *Snodgrass*. *Baker v. State*, 158 S.W. 998, 1001-02 (Tex. Crim. App. 1913). This Court did not hesitate to uphold the new scheme as consistent with separation of powers. *Id*. at 1002-03. We deemed it well within the Legislature's prerogative to affix punishments in the first instance, and we held that it did *not* intrude upon the executive pardon power for the Legislature to provide for the assessment of probation *as part of the jury's verdict*, rather than *after* it. *Id*.[22]

In the instant case, Appellant had already pled guilty, and his conviction was pending on appeal, at the time the Legislature acted to undo his conviction. This was no less a

---

[20] The issue in *Snodgrass*—whether the Legislature can authorize the Judiciary to impose a form of probation after a jury verdict of guilty without encroaching on the Executive's domain—was rendered moot by the addition of Article IV, Section 11A to the Texas Constitution. *See* notes 1 & 2, *ante*. This does not otherwise affect the authoritative value of *Snodgrass* with respect to its interpretation and application of Article IV, Section 11(b).

[21] Only with the 1965 Code of Criminal Procedure did juries in Texas begin to assess punishment in the second phase of a bifurcated proceeding. *Sims v. State*, 273 S.W.3d 291, 293-94 (Tex. Crim. App. 2008) (citing *Brumfield v. State*, 445 S.W.2d 732, 737-38 (Tex. Crim. App. 1969)).

[22] *See Ivey v. State*, 277 S.W.3d 43, 48 n.33 (Tex. Crim. App. 2009) (discussing the interplay between our opinions in *Snodgrass* and *Baker*).

usurpation of the executive pardon power than what occurred in *Underwood*, *Miers*, and *Snodgrass*. It is true that, in *Underwood* and *Miers*, the convictions had already been affirmed on appeal when the Legislature purported to nullify them. But final appellate disposition of a conviction is not the starting point of the Governor's pardon power, as *Snodgrass* made clear, and the Court's dispositions in *Underwood* and *Miers* did not turn on the *finality* of the convictions.[23] Any usurpation by one governmental department of a power that belongs to another, "*to whatever degree*," violates Article II, Section 1's proscription against one department's exercise of constitutional power properly attached to another. *Armadillo Bail Bonds*, 802 S.W.2d at 239. To the extent that the saving clause at issue in this

---

[23] In *McNew v. State*, 608 S.W.2d 166 (Tex. Crim. App. 1978), the Court revisited the question of what "after conviction" means, this time in the context of deciding the constitutionality of the new deferred adjudication statute under Article IV, Section 11A. By this time, criminal trials had become bifurcated. We cited a number of cases construing the word "conviction" for *statutory* purposes, including a pair of cases holding that a conviction "is an adjudication of guilt plus an assessment of punishment." *Id*. at 171 (citing *Woods v. State*, 532 S.W.2d 608 (Tex. Crim. App. 1976), and *Faurie v. State*, 528 S.W.2d 263 (Tex. Crim. App. 1975)). But we did not explicitly *hold* that "after conviction" meant after a finding of guilt *and an assessment of punishment*, even for purposes of Article IV, Section 11A, much less for purposes of Article IV, Section 11. Instead, we held that, at the very least, "conviction" "*always* involves an *adjudication of guilt*." *Id*. at 172. And, because there is no adjudication of guilt that precedes deferred adjudication probation, such probation is not assessed "after conviction" for purposes of Article IV, Section 11A. *Id*. Then, on rehearing, we added that it was well within the legislative prerogative to provide for an assessment of probation *before* conviction. *Id*. at 176 (citing *Baker v. State*, 158 S.W. 998 (Tex. Crim. App. 1913)). It is unclear whether our discussion of the phrase "after conviction" in *McNew*, for purposes of Article IV, Section 11A, would (or should, or even could) have any bearing on our construction of "after conviction" in *Snodgrass*, for purposes of Article IV, Section 11. It is doubtful that *McNew* ought to be read to extend the point at which "after conviction" may be said to have commenced under Article IV, Section 11, since the Legislature may not, by statute, alter the meaning of a constitutional term. *Ex parte Giles*, 502 S.W.2d 774, 784 (Tex. Crim. App. 1974). But even if we did read *McNew* to alter *Snodgrass*'s understanding of "after conviction," it would not affect the bottom line in this case. By the time of the legislative enactment at issue here, Appellant had been found guilty, his punishment has been assessed, and his conviction had been reduced to a written judgment, which was pending on appeal.

case operated to nullify a conviction that was pending on appeal, it encroached upon the Executive Department's exclusive constitutional power to grant a pardon at any time "after conviction."[24]

**CONCLUSION**

The Ninth Court of Appeals concluded that the Legislature has "essentially pardoned" Appellant by applying the legislative amendment to his pending conviction. *Van Dyke v. State*, 485 S.W.3d 507, 511 (Tex. App.—Beaumont 2016). For the reasons developed in this opinion, I agree with that assessment. Consequently, I would affirm the court of appeals' judgment. Because the Court today does not, I respectfully dissent.

FILED:       December 20, 2017
PUBLISH

---

[24] The Court seems to glean some amorphous support from the fact that the Governor signed the legislation at issue in this case. *See* Majority Opinion at 41 ("Both our Legislature and our governor have decided that a sexually violent predator's failure to comply with his sex offender treatment program as part of his civil commitment should be resolved through the civil commitment program rather than give rise to a new criminal conviction."). It is true that the Governor has a constitutionally conferred role to play in approving or disapproving the acts of the Legislature. TEX. CONST. art. IV, § 14. We should not confuse his exercise of this quasi-legislative function with an exercise of his jealously-guarded, purely-executive authority to pardon, which he simply cannot choose to delegate consistent with principles of separation of powers. *Cf. Ex parte Perry*, 483 S.W.3d 884, 901 (Tex. Crim. App. 2016) ("[T]he governor cannot by agreement, on his own or through legislation, limit his veto power in any manner that is not provided in the Texas Constitution.").